WALTER FRENCH, APPELLANT, *v.* MOODY CURRIER, GUARDIAN, APPELLEE.

In appeals from the judge of probate, this court will only investigate those questions which come within some of the special reasons for the appeal.

Where a guardian receives the stocks, or other funds belonging to his ward, he must hold and account for the same as a *trust,* at the price at which he took them, and if any be disposed of, then at the highest price received by the guardian; also for any and all dividends, or income, that may be realized from said funds.

The guardian is to be charged six per cent. interest upon all receipts, and allowed the same on all expenditures, and also a credit of one per cent., which is understood to be his reasonable commission in this State; his account to be made up with annual rests.

If the guardian has invested any of the moneys of his ward in unproductive stocks, it must be his own risk; the ward is not obliged to assume them when he arrives at 21 years of age.

*S. N. Bell,* for appellee.

This is an appeal from the decree of the judge of probate allowing the account of M. Currier as guardian of Walter H. French.

The grounds of the appeal as filed are :

I.  Because the said guardian in said account has not charged himself, nor was he charged by said court with the full amount of dividends received by him from bank stock and gas stock transferred to him by Abram French, administrator of the estate of Walter French, late deceased ; said stocks being received by said guardian as part of the interest of the petitioner in the estate of his father, said Walter French, to be held in trust by him for his benefit.

II.  Because said guardian in said account has not charged himself, nor was he charged by said court with the full amount of money received by him as interest upon the money of his said ward in his hands, said money having been by him intermingled with his own.

III.  Because the said guardian has not in said account charged himself with the full amount of interest or dividends received by him from investments made with the money of his said ward in his hands.

IV.  Because the said guardian was allowed the gross sum of twenty-five dollars for his services as guardian, there being no specification of what those services were or when rendered.

V.  Because there is an error in the computation of the interest, the said guardian not having computed the full amount of interest, with which he should have been charged.

VI.  Because the said guardian was allowed interest on the several amounts paid out by him for his ward during each year.

The guardian has stated his account, charging himself with all sums received, and adding interest from the date of the receipt, to the end of the year at 5 per cent., and claiming an allowance for payments made, with interest on the same, at the same rate, to the end of the year, and carrying the balance forward at the end of the year, according to the practice of the courts of this State.  *Gordon* v. *West*, 8 N. H. 455 ; *Wendell* v. *French*, 19 N. H. 211 ; *Stark* v. *Gamble*, 43 N. H. 465.

He has not claimed any allowance for the time the fund remained uninvested, after its receipt, as he might reasonably have done when the sums were less than $500, as was the case in many instances.  *Stark* v. *Gamble*, 43 N. H. 465 ; *Robbins* v. *Hayward*, 1 Pick. 528, note ; *Karr* v. *Karr*, 6 Dana. 3 ; *White* v. *Parker*, 8 Barb. Sup. Ct. 48 ; *Worrall's Appeal*, 23 Penn., (11 Harris) 44 ; *Armstrong* v. *Walkup*, 12 Gratt. (Va.) 608 ; *Ringold* v. *Ringold*, 1 Har. & G. 11 ; *Huffer's Appeal*, 2 Grant's Cases, (Penn.) 341.

The administrator of Walter French's estate caused the estate of the deceased to be appraised.  And he took the whole of the estate at the appraisal (not having procured license to sell within six months) and

accounted for it as cash at the appraisal in the settlement of his administration account in the probate court.    Rev. Stat. ch. 159, sec. 5.

After that settlement which left a balance in the hands of the administrator, he paid that balance over to the guardian, June 6, 1855, the sum of $10,500, part in money, part by note, and part by stocks.

The auditor, to whom the cause was referred, attempts to report the evidence on the question how the stocks were taken by Mr. Currier, leaving that question of fact to be determined by the court.

Upon the first ground of appeal, the question is presented, did Mr. Currier take the bank stock and gas company stock as part of the estate of the late Walter French, and to be held by him in trust for his ward or was it simply a payment to him of so much money by the administrator, wherein he took the stocks as the representative of so much money?    The auditor's report shows that he took them from Abram French, as being the balance in the hands of the administrator, and not as property specifically held by the administrator.

The administrator had taken the whole estate at the inventory, including these stocks.    He had disposed of part of them by sale, and accounted for those transferred to Mr. Currier as cash.    In effect the administrator had paid for the stocks, and they were his property.    Nor was there any authority of law to warrant the administrator in turning over the stocks to the guardian otherwise than as cash.

The receiving the stocks by the guardian otherwise than as cash, or the investing the funds of his ward in such stocks on any pretext, was a breach of trust.    Hill on Trustees, 378 and note ; Pamphlet Laws, ch. 1963, June, 1857 ; Pamphlet Laws, June, 1866, ch. 4250.    The guardian testifies that he received the stocks as a payment as cash, and his whole course of action, subsequently shows that he so understood the transaction.    He had his attention called to the fact that such investments were not permitted by the court.    The transfer was to him as an individual, and not in his representative capacity.    The receipt given was for money.    He charged it in his cash account as money (merely noting the fact how much was cash, notes, &c.)    He refused to take it at the appraisal, but did take it at a different rate—refused to take some part of the stock the administrator had taken of the estate, at any price. He took it at a premium, which he would not have done if he was to account for it specifically, leaving the loss, if any, to fall on himself.    The dividends due soon after, he took to his own use, charging himself with the interest on the sum due from the administrator.    And the whole course of the transaction shows that the parties then all understood it as a payment.

The action of Walter H. French shows that he understood it the same, as did his agent, Luther H. French, both when he settled his own account and when he settled that of Walter, and transmitted a copy of the account to him, in both instances treating the $10,500 as a cash payment.    The attention of both Luther and Walter being then called to the fact that the stock was treated as cash and the dividends not included in the account, and explanation given as to the mode in which the account was made up, and particularly by the fact that Luther then

claimed that the guardian should have accounted for 8 per cent. No ob-jection was made then to the correctness of the account, nor for more than five years after the account of Walter was settled, and about seven years after the settlement with Luther.

Their statements, after that lapse of time, as to the manner they un-derstood the transaction was to be, before it was actually completed, are not entitled to much weight when they are clearly contradicted by their whole course of action, while the affair was comparatively recent, and at a time when they were informed of all the facts or had such informa-tion as should have put them on inquiry.

Upon all the evidence in the report, and in the supplementary report, it is clear that the stocks were the property of Abram French, and that Mr. Currier received them as a payment, as the equivalent of money, as he would have taken bank notes, legal tenders, checks or other evi-dence of property for the same amount.

The investments of trust funds in bank and other stocks being illegal, Hill on Trustees, 378, &c, and those here in question being then the property of Abram French, it will be presumed that the administra-tor and guardian both understood the law and made the transfer in ac-cordance with it. The stocks were not then the property of the estate, nor of the wards, and the guardian, after they came into his hands, was under no obligation to account for the dividends. The correctness of this position is fully shown by the enactment of the statute of June ses-sion, 1857, ch. 1963, authorizing such a transfer to be made under a decree of the probate court.

The general principle that courts of equity will scrutinize all settle-ments made out of court by a guardian with his ward at or about the time of his coming of age is not controverted. But it is equally as well settled, that, if there is no substantial unfairness, the court will not dis-turb such settlement after a lapse of many years, and an acquiescence on the part of the ward with full knowledge of the facts, or with such information at the time of the settlement as should have put him on in-quiry. *Boynton* v. *Dyer*, 18 Pick. 1; *White* v. *Parker*, 8 Barb. Sup. Ct. 48; *Whedbee* v. *Whedbee*, 7 Jones' Law (N. C.) 14.

The stocks were not in the hands of the administrator as trustee for the heirs. And the case of *Perry* v. *Hall*, cited by defendant does not sustain the proposition. It was the duty of the administrator either to have sold them by license or to account for them at the appraisal. Rev. Stat. ch. 159, sec. 5. If sold by license he is to account for the pro-ceeds of the sale ; if taken at the appraisal they become the property of the administrator. No harm occurs to the estate or to the heirs by the latter course, as all the value such property is understood to have by reason of the amount of income it produces, is included as a premium in the sum at which it is appraised.

The stocks not being the property of the wards nor held in trust for them ; their use as a mode of payment by the administrator to Currier was a transaction neither void nor voidable any more than a payment in any other kind of funds.

The cases cited by the defendant to sustain the position that a pur-

chase by a guardian of his ward's estate is voidable, fail to have any application, because the facts do not show such to have been the nature of the transaction.

The question is raised, if the guardian did not invest the funds of his ward in these stocks, where did he invest them? It was used by him, as his own funds were, and constituted the larger part of the estate for which he was taxed, and which was principally in land and buildings, which probably did not yield an income exceeding four per cent.

There was no evidence to show that the funds in the hands of Mr. Currier have been made to earn more than 6 per cent. He made some good investments and some bad ones in stocks. He has investments in real estate to a considerable amount, as the amount for which he is taxed shows. Since the stock in the Print Works, in the Amoskeag Manufacturing Co., the Stark Mills, and Amoskeag Gas Lt. Co., and the Blodgett Edge Tool Co., being all manufacturing corporations, are not taxed directly to him, but the taxes are paid by the corporations respectively. Compiled Statutes, ch. 41, sec. 3, ch. 42, sec. 5. And the amount of those investments forms no part of the sum for which the taxes against Mr. Currier were assessed, while in fact a large part of the fund for which they were assessed, is derived from the "estate of these wards in his hands."

An argument is attempted that because the guardian did not specifically render an account of the taxable estate of his wards so that it might be taxed separately, that he is lacking in honesty and integrity towards his wards. He inadvertently fails to render to the assessor a statement of his wards' estate and his own separately, by reason whereof the whole burden of the tax falls on himself, and that is claimed to be dishonesty towards his wards; and on the other hand when in 1865 he did return his wards' estate separate from his own so that it was taxed to them, that is also claimed as unfair dealing toward his wards.

The ward's property was liable to taxation. Rev. Stat. ch. 40, sec. 12; Payson v. Tufts, 13 Mass. 493. The tax on the ward's estate was in fact paid by the guardian; who, in the settlement from which this appeal is made, claimed no allowance for such payment, and yet the counsel for the ward claim that it was the duty of the guardian to have in some way sheltered the ward's property from taxation, and for the pecuniary benefit of his wards to have adopted a course of dishonesty from year to year and cheated the assessors and the public in the assessment of taxes on his ward's estate.

The moral sense must be strangely obtuse which permits a party to gravely come into court and present such a scheme, as being the care, prudence and good faith in the management of the funds of his wards which honesty, integrity and the law required the guardian to exercise.

In the defendant's brief it is said, that, in the matter of the taxation, the guardian was guilty of unfairness and dishonesty; there would be as much reason and honesty, and probably as much truth, if it were said that this whole matter of appeal were a speculation, and attempt to satisfy an old grudge, in which, if successful, there is no reasonable cause for belief that these wards will be in any way benefited.

None of the other grounds of appeal are insisted upon in the argument, and it may be assumed that those discussed are the only ones on which the defendants claim to maintain their appeal.

In the matter of the $25.00 charge for services. It was allowed by the judge of probate as being a reasonable sum in his discretion upon consideration of the facts that from December, 1853, to June, 1855, the guardian had paid out for his wards more than he had received, and had made no other charge for services and expenses in procuring the appointment, attending probate court, settling with the administrator and the services which must necessarily have been rendered. For these services and the expenses necessarily incident thereto, it is apparent the sum claimed is no more than a fair equivalent.

The effect of the mode of stating his account adopted by the administrator is to give him one per cent. as his commission, and no reason is shown why he is not entitled to retain that sum as a fair compensation for his services.

A question is raised in the defendant's brief as to the amount of compensation to be allowed to the guardian. No appeal was claimed on that ground, except as to the $25 claim. Beyond that the question is not open. Mathes v. Bennett, 21 N. H. 200; Hatch v. Purcell, 21 N. H. 544.

If the guardian should be held to account for these stocks as taken by him specifically, he should be credited by delivering them to the heirs, at the same rates that he took them from the administrator, and Luther H. French and Walter H. French should account to him for the difference between the price at which they took the stock transferred to them and the price allowed in the transfer from the administrator. The evidence and the facts reported by the auditor show that the account as rendered by the guardian and allowed by the probate court is substantially correct, and that there is no just ground for the defendant's appeal.

Should the opinion of the court be that the account ought to be corrected, no difficulty will arise in settling the accounts of this defendant and the other wards under the guardianship of the plaintiff, upon such principles as the court may determine to be just.

*Morrison, Stanley & Clark*, for appellant.

"The relation existing between guardian and ward is such, that the principles of a sound public policy require a close and rigid supervision on the part of courts of equity, of all gifts or conveyances to the guardian by his ward, on coming of age. The case is much stronger for relief, than is that of parent and child; because the guardian is not supposed to be under the influence of that affection for his ward, which the parent has for his child; and, consequently, has not that check upon his selfish feelings. The court acts upon the broad principle of public utility, for the purpose of discouraging all such transactions; and will relieve against them, although in the particular instance, there be no actual unfairness or imposition." The Law of Trusts and Trustees, Tiffany and Bullard, 134.

In the case of *Hylton* v. *Hylton*, 2 Vesey 547, Lord Hardwicke said : "Where a man acts as guardian or trustee in the nature of a guardian, for an infant, the court is extremely watchful to prevent that person from taking any advantage immediately upon his ward coming of age, and at the time of settling accounts or delivering up the trust, because undue advantage may be taken." See also *Stark* v. *Gamble*, 43 N. H. 467.

The parties in this case stand in the relation of guardian and ward ; and two questions arise upon the facts found by the auditor in his report :

First.    Who is entitled to the dividends received upon the bank and gas stock by the guardian during the continuance of the guardianship ?

Second.   What commission is the guardian entitled to retain as compensation for his services, upon the facts shown in the case ?

I.    As to the bank and gas stock.    By the report of the auditor it appears that on the sixth day of June, 1855, the administrator of the estate of Walter French transferred to the guardian, 50 shares of the Amoskeag Bank stock, 20 shares of the Appleton Bank stock, and 20 shares of the Manchester Gas Light Co.'s stock, and the guardian charged himself on his book of accounts, under that date, with these stocks.    The auditor also finds that these stocks were all retained by the guardian, up to the time of the settlement with Luther H. French, one of his wards, of his account as guardian of the said Luther H. and Walter H. French, when 20 shares of Amoskeag Bank stock were transferred by him to said Luther, and 10 shares of the same stock to said Walter, and the residue of said stock still remains in said guardian's hands.    The auditor also finds that at the time of the transfer of the stock by the administrator to the guardian, June 6, 1855, it was understood by the administrator and the heirs that the *stock* was to be held by the guardian for the benefit of the heirs, that it was a *transfer* or *assignment* merely, and not a *sale* of the stock to the guardian, but that the guardian understood that it was a *sale* of the stock to him. The evidence upon this point is reported by the auditor, but we do not regard it material, because upon the facts found by the auditor there was no legal sale of the stock.    To constitute a sale, both parties must have understood and intended the transaction as a sale.

While these stocks remained in the hands of the administrator, they were held by him as trustee for the heirs.    *Perry* v. *Hale*, 44 N. H. 369.    And even if he had undertaken to sell them, Currier, being at that time the guardian, could not be the purchaser of the property of his wards.    The sale might not have been absolutely *void*, but it would have been *voidable*, and the heirs would have been at liberty to avoid it, as the appellant in this case now seeks to do.    *Wormley* v. *Wormley*, 5 Curtis 469, 8 Wheat. 421 ; *Michoud* v. *Girod & al.*, 16 Curtis 188, 4 How. 513 ; *Sparhawk* v. *Allen*, 21 N. H. 9, and cases cited.

But if the guardian purchased the stocks, with whose money did he pay for them ?    Whose money did he invest ?    Clearly that of his wards.

If he did not invest it there, where did he invest it? And if their funds were invested in these stocks, then, upon the facts found in this case, they are entitled to the dividends which accrued upon the stocks, according to the rule laid down in the cases already cited.

The principle applicable to this case is, we believe, correctly laid down in *Barney* v. *Saunders*, 16 Howard 535; Curtis' Decisions of the Supreme Court of the U. S., vol. 21, page 292, in the following language: "It is a well settled principle of equity, that wherever a trustee, or one standing in a fiduciary character, deals with the trust estate for his own personal profit, he shall account to the *cestui que trust* for all the gain which he has made. If he uses the trust money in speculations, dangerous though profitable, the risk will be his own, but the profit will enure to the *cestui que trust*."

II. What commission is the guardian entitled to retain as compensation for his services upon the facts shown in this case?

Section 36 of chap. 159 of the Compiled Statutes, provides that "every guardian shall be allowed a reasonable compensation for all proper expenses and services in the discharge of his trust."

In cases where the guardian has faithfully discharged the duties of his trust the rule seems to have been adopted in this State, of allowing him a commission of one per cent. for taking care of the funds of his wards; or, in other words, the legal rate of interest being six per cent. the guardian is charged five per cent. on the funds in his hands, when nothing appears to show that the funds have earned more than the legal rate of interest. And when it appears that the funds have in fact earned nothing, but have been suffered by the guardian to lie idle in his hands, the guardian will be charged with interest at the rate of five per cent. on the ground that he should have invested them, and he is charged with the legal rate of interest and allowed his commission of one per cent. *Stark* v. *Gamble*, 43 N. H. 468.

But if it appear that the profits of the funds have in fact exceeded six per cent., then the excess belongs to the wards according to the doctrine of the cases we have already cited.

The auditor reports that "the guardian has not kept the funds of his wards separate from his own, except such as remain invested in said stocks, but mingled the moneys received from the administrator indiscriminately with his own, which he invested in stocks, some good and others not good." The report also shows that with a single exception, that of the Blodgett Edge Tool Co., the guardian's investments have yielded large dividends, amounting to eight per cent. semi-annually, and some much larger than that. Upon these facts the wards are entitled to the benefit of the best investments of the guardian, so far as he has mingled their funds with his own. The law will not allow the guardian to say that he has invested his own funds to more advantage than he has those of his wards. 2 Kent's Com. 229 and 231; Tiffany and Bullard's Trusts and Trustees, 594.

The guardian in this case cannot claim that the court should exercise any unusual leniency, or in any degree relax the rule in his behalf. The

balance of funds in his hands at the end of each year, the amount of property for which he was taxed in the city of Manchester, the amount of the taxes assessed against him, and the amount of the taxes charged by him to his wards during each year from 1855 to 1865, as reported by the auditor, furnish abundant evidence that the guardian has failed to exercise that care, prudence and good faith in the management of the funds of his wards, which honesty, integrity and the law required him to exercise.

In 1864, the whole amount of property for which said Currier was taxed, including the funds of his wards, was $25,150; and at that time he had in his hands funds of his wards, as shown by his own books, to the amount of $26,095.77. The taxes upon the whole property for that year amounted to $363.17, and he charged to his wards, as their portion of the taxes for 1864, $379.92, *sixteen dollars and seventy-five cents more than he paid upon their property and his own.* That he had a large estate of his own at that time is shown by the fact that the next year, 1865, he returned his own taxable property, separate from that of his wards, at $21,600. By a comparison of the other years his unfairness and dishonesty will be equally apparent though perhaps in a less degree. The burdens of taxation which the law imposed upon him, he endeavored to transfer to his wards. His own estate, already large, he has attempted to increase by withholding from his wards, funds which legally, equitably and morally belonged to them. It does not now avail the guardian to say that his account of taxes charged was withdrawn at the hearing before the judge of probate. He had charged them year after year and had settled with Luther H. French upon that basis; and his withdrawal of the claim before the judge of probate, when he found that a full examination of his acts as guardian was to be made is only a confession that his attempt to defraud had not succeeded.

The decision of the court in this case will determine the basis upon which the settlement of the guardian's account, in the case of the other wards, is to be made; and it will be necessary that a master should be appointed to state the accounts between the parties, when the principles applicable to this case have been settled.

NESMITH, J. This is an appeal from the decree of the judge of probate in this county, allowing the account of said Currier as guardian of his ward, Walter H. French. There are six grounds of appeal filed by the appellant. They are correctly stated in the counsel's brief for the appellee. The case has been referred to an auditor, and his report, as amended, is before us, and presents certain facts and questions proper for our consideration. We have a right to investigate only those questions which come within some of the reasons assigned for the appeal. *Bean* v. *Burleigh,* 4 N. H. 550; *Mathes* v. *Bennett,* 21 N. H. 200.

Under the facts reported by the auditor, it appears that the appellee was duly appointed guardian of the said Walter, on the 6th day of December, A. D., 1853, and accepted and held that trust until the second day of December, A. D., 1858, when the appellant became 21 years of age. The said Currier was also during this time guardian of several

other minor brothers and sisters of the appellant.   The auditor's report finds that, on the 6th day of June, A. D., 1855, the said Currier received from Abram French, the administrator of the estate of the father of the appellant, the following described personal property, viz. :

| | |
|---|---:|
| 50 shares of the Amoskeag Bank stock, appraised at $108 per share, | $5400.00 |
| 20 shares Manchester Gas Light Co. stock, $110 per share, | 2200.00 |
| 20 shares Appleton Bank stock, $105 per share, | 2100.00 |
| Note for $550, and interest thereon, $57.75, | 607.75 |
| Cash, | 192.25 |
| | $10,500.00 |

For which said property, the said Currier executed to the said administrator the following receipt :

June 6, 1855.   Received of Abram French, administrator of the estate of Walter French, ten thousand five hundred dollars.
(Signed)          MOODY CURRIER, Guardian of the children.

The said guardian also charged himself in his book of accounts as follows :

| | | |
|---|---|---:|
| 1855.   June 6. | To cash of A. French, | $192.25 |
| | To stocks and note, | 10,307.75 |
| | | $10,500.00 |

The certificates of said stock were transferred to said Currier by due assignment on the back thereof, signed by the administrator, Abram French.

Under this, and the other evidence of the case, the guardian claims that the aforesaid shares of stock were delivered to him, as his own private property, and that he was to account for the same, at their estimated value, as so much cash, in his settlement with his wards.   On the other hand, the said administrator and his ward allege that they did not so understand the transaction, but rather that the aforesaid shares of stock were to remain in the hands of the guardian, as the property of his wards, and that he was to account in his settlement with his wards for the same specific stock, and all the dividends which in the meantime might accrue thereon.   Upon the consideration of the circumstances of this part of the case, and the law applicable thereto, we cannot find that the said Currier became entitled to hold said shares, as his private property.   There was no express assent on the part of the administrator to a sale of this nature.   Nor does it appear that the administrator had sufficient legal power to sell any part of said stock at private sale.   If he would make a legal sale and transfer of said stock, as administrator, he must strictly pursue one of two courses.   He must

either assume the whole inventory of the personal estate of the intestate, at the appraised value ; or, he must, under the license of the judge of probate, sell the same at public auction and upon a sufficient previous notice of the sale. In this case, there is no evidence of any license to sell at public auction, nor does it appear that the administrator assumed the inventory of the whole personal property. On the contrary, the administrator so managed with the Manchester Gas Light Co. stock, and with that of the Vermont & Canada Railroad stock, as to dispose or transfer the stock of both corporations, at a price far less than their appraised value. The course adopted by the administrator is not sanctioned by the statute law. And it is enough to say, that the administrator is liable to account for the aforesaid stocks at the inventory price. And a resort may be had in the first instance to the administrator, and he may be required to show cause why a deduction in the price of said stocks has been claimed by him, or allowed to him.

Trusts of this nature are enforced not only against persons who are rightfully possessed of trust property, but against all persons who come into possession bound by the trust, or with notice of the trust, and whoever so comes into possession is considered as bound with respect to that special property to the execution of the trust. 1 Story's Equity, sec. 533 ; *Hill* v. *McIntyre*, 39 N. H. 416.

Chancellor Kent says, the guardian's trust is one of obligation and duty, and not one of speculation or profit, and is governed by strict rules. He cannot reap any benefit from the use of the ward's money. He cannot act for his own benefit in any contract, or purchase, or sale, as to the subject of the trust. If he has been guilty of any negligence in keeping, or disposing of the wards' money, he must bear the loss himself. 2 Kent's Com. 2 ed., 246, and note ; *Sparhawk* v. *Allen*, 21 N. H. 9, and cases cited ; *Barney* v. *Sanders.* 16 Howard 535.

The guardian in this case may, therefore, be considered as the holder of the stocks in question not as his own, or held in his own right, as a purchaser, but as the property of his wards, and, therefore, must be held responsible for them, and to account for them at the price at which he took them ; or if any have been actually sold by said guardian, he must account for them at the price received by him, and also for any and all dividends or income received by him during his guardianship. The dividends, as reported by the auditor, are presumed to be faithfully reported by the auditor, both as to their amount, and the date of their reception, and can be adjusted by the guardian by opening new and separate accounts with each ward, and apportioning the amount belonging to each one, upon the principles suggested in *Stark* v. *Gamble*, 43 N. H. 467.

As to the commission, or compensation, which the guardian may be entitled to demand of his ward, we would remark, that, upon the evidence before us, it does not appear to us that the omission to credit the wards with the whole amount of dividends received by him on the stocks in his hands, has originated from any corrupt intent to defraud his wards, but rather from a mistake, or misapprehension, as to the true

character and extent of his contract with the administrator upon the estate, and the legal consequences incident thereto.

Therefore, our conclusion is, that the guardian's account be so far corrected, that he be charged with the said stocks at the rates mentioned in his receipt, or if any shares be sold, at the highest amount actually received therefor, also for the dividends received on said stocks from and after their receipt, with five per cent. interest on said sales or receipts, at annual rests, deducting the expenditures made by him for the benefit of his wards and interest thereon at the same rate and times. Or, in other words, that the guardian be charged with six per cent. interest on all his receipts, and allowed a credit of one per cent., which is understood to be the common reasonable commission in this State in like cases. *Stark* v. *Gamble, ante.*

If the guardian has invested any of the moneys of his wards in unproductive stocks, it must be his own loss. The wards are not obliged to take them from the guardian. *Kimball, apt.* v. *Reding*, 31 N. H. 352 ; Hill on Trustees, 378.

The charge of $25.00 made by the guardian for special services in furnishing his letters of guardianship, and for time, &c., in preparing his account for settlement, has been allowed by the auditor, and we approve of the same as being reasonable and consistent with common usage in this class of cases.

From A. D. 1855 to 1866, inclusive, the said guardian had more or less property in his possession, belonging to his several wards, liable to assessment for public taxes. The appellant's share of the taxes for A. D. 1864, would not be large, in consequence of a previous payment made to his ward under a partial settlement previously made with him. It is not pretended that the guardian can claim anything for taxes, assessed prior to 1864. For the just amount of taxes assessed on the appellant's share of the estate liable to be rated for public taxes, which remained in the hands of his guardian, in April, 1864, the said guardian has now a good claim. The auditor will investigate the proportion of the appellant's taxes for the year 1864, and if anything be legally assessed since that year upon the appellant's estate, he will allow it accordingly.

The report of the auditor will be recommitted accordingly, and he will make up a statement of the appellant's account on the principles here suggested.